IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ALLIED WORLD NATIONAL ASSURANCE COMPANY, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>NHC, INC., also known as MNS, LTD., doing business as ABC STORES,<br><br>Defendant. | Civil No. 22-00469 MWJS-WRP<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR BIFURCATION OF COUNT II OF DEFENDANT'S COUNTERCLAIM |

**INTRODUCTION**

This is an insurance dispute between a local retailer and the insurance companies that supplied it a liability policy.  The retailer, Defendant MNS, Ltd., was sued under the Lanham Act for selling and advertising coffee products that were allegedly falsely labelled as "Kona" coffee—that is, coffee originating from the Kona District of Hawaiʻi Island—when they contained little to no real Kona coffee.  The insurance companies, collectively known as Plaintiffs Allied World, brought this action seeking a declaratory judgment that it did not owe a duty to defend or indemnify MNS for its liability in the Kona coffee case.  MNS eventually settled with the plaintiffs in that underlying suit.  Allied World then amended its complaint in this action, and MNS responded with a counterclaim for

breach of contract (Count I) and breach of the duty of good faith and fair dealing (Count II).

Allied World now moves to bifurcate Count II of MNS's counterclaim and to stay discovery on that count.  ECF No. 72.  For the reasons set forth below, the Court GRANTS the motion.

## BACKGROUND

In 2019, MNS was named as a defendant in a class action lawsuit brought in the Western District of Washington by Kona coffee growers.  *See* ECF No. 62, at PageID.2856.  That lawsuit, *Bruce Corker*, et al. *v. Costco Wholesale Corp.*, et al., Civil No. 19-00290, will be referred to here as the "Corker Lawsuit."  *See also Corker v. Costco Wholesale Corp.*, 585 F. Supp. 3d 1284 (W.D. Wash. 2022).

MNS believed that its insurance policies should cover liability from the Corker Lawsuit, so it tendered notice of the suit to its primary insurer, Mitsui Sumitomo Insurance USA Inc., as well as to its excess insurer, Allied World.  Mitsui took the position that it owed $1 million to MNS under its policy's "Personal and Advertising Injury" coverage.  ECF No. 62, at PageID.2858.  Allied World had a different view of its own policy's Personal Injury and Advertising Injury coverage.  *See* ECF No. 74-3, at PageID.3053.  Accordingly, it filed this action in November 2022, seeking a declaratory judgment that it had no duty to defend or indemnify MNS.  *See* ECF No. 1.

3

In its initial complaint, Allied World contended that it had no duty to defend or indemnify MNS for three independent reasons:  (1) the underlying lawsuit failed to allege a covered personal injury and advertising injury, (2) an exclusion applied, and (3) MNS continued to advertise and sell certain products after the underlying lawsuit was filed.  *See id.* at PageID.14.

In February 2023, MNS and the Corker plaintiffs participated in an in-person mediation session.  ECF No. 62, at PageID.2866-68.  Mitsui sent its primary claim adjuster to the mediation.  *Id.* at PageID.2868.  But despite MNS's request that Allied World do the same, Allied World allegedly "refused to send any adjuster and only sent its outside coverage counsel."  *Id.*

Two months later, in April 2023, the Washington court preliminarily approved MNS's settlement with the Corker plaintiffs for $12 million, ECF No. 61-3, at PageID.2260, and MNS sought indemnification of $11 million from Allied World, ECF No. 62, at PageID.2868.  Allied World denied coverage and filed an amended complaint in this case.  *See id.*; ECF No. 61.  In its amended complaint, Allied World again sought a declaration that it did not owe MNS coverage, but it alleged an additional and broader ground for its requested relief:  that Mitsui's $1 million coverage limit should be renewed in each of the eight years implicated by the class action settlement, such that Allied World would owe no indemnification until Mitsui paid a total of $8 million.  *See* ECF No. 61, at PageID.2108-10.

4

MNS then filed its counterclaim.  In it, MNS alleged that Allied World (1) breached its contractual duty to indemnify MNS and (2) acted in bad faith when dealing with MNS leading up to, during, and after the Corker mediation.  *See* ECF No. 62.  Specifically, MNS contends that Allied World's amended complaint raises a new reason for denying coverage that is contrary to the policy's language and goes against what Allied World had communicated about its coverage position all along.  *Id.* at PageID.2871.  Moreover, MNS alleges that Allied World acted in bad faith at the Corker mediation because it "failed to meaningfully participate" by only sending its outside coverage counsel, rather than an adjuster, and because Allied World represented that it would only contribute a "'modest' amount towards settlement."  *Id.* at PageID.2872-73.  MNS seeks a jury trial for compensatory and punitive damages for its breach of contract and bad faith claims.  *Id.* at PageID.2874.

In July 2024, Allied World filed the present motion for bifurcation of Count II of Defendant's counterclaim, which is MNS's bad faith claim.  ECF No. 72. The Court held a hearing on the motion on September 19, 2024.  *See* ECF No. 88.

## DISCUSSION

Bifurcation of trial is within the Court's sound discretion.  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004).  Federal Rule of Civil Procedure 42(b) allows, but does not require, bifurcation to further

convenience or avoid prejudice. *Id.* And "implicit in the power of courts to bifurcate trial under Rule 42(b) is the 'power to limit discovery to the segregated issues' because '[o]ne of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery pending resolution of potentially dispositive preliminary issues.'" *Perkins v. City & Cnty. of San Francisco*, Case No. 16-cv-06814, 2017 WL 1540736, at *2 (N.D. Cal. Apr. 28, 2017) (quoting *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) (per curiam)).

Courts consider five factors when deciding whether bifurcation is appropriate: "(1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted." *Clark v. I.R.S.*, 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009) (internal quotation marks omitted). "Courts also consider the complexity of the issues and possible jury confusion." *Id.*

Assessing these factors in turn, the Court finds that each supports (or at least does not meaningfully weigh against) bifurcation of Count II and a stay of discovery on that claim.

1.   The first factor, whether the issues are significantly different from one another, supports bifurcation.  While both the coverage and bad faith claims involve the same underlying insurance agreement, they have different legal elements and standards of proof.

On the one hand, the coverage and breach-of-contract claims will likely turn on the policy's language and the Corker Lawsuit record.  *See Apana v. TIG Ins. Co.*, 504 F. Supp. 2d 998, 1005 (D. Haw. 2007) ("Under Hawaii law, courts look at the language included within the four corners of the insurance policy to determine the scope of the insurer's duties.").  Allied World's claims for declaratory relief will focus on whether (1) Allied World's policy excludes coverage for the underlying suit and, if it does not, whether (2) MNS's settlement payments exceeded the primary insurance limit.  *See* ECF No. 72, at PageID.2996-97. Similarly, MNS's breach-of-contract claim requires it to establish that Allied World owed a duty to indemnify and that it breached that duty.  *See Arc in Haw. v. DB Ins. Co.*, 544 F. Supp. 3d 1014, 1022 (D. Haw. 2021) ("To prevail on a breach of contract claim under Hawaii law, plaintiff must establish:  (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; (5) when and how defendants allegedly breached the contract; and (6) how the plaintiff was injured.").  In other words, the declaratory coverage and

7

breach-of-contract claims will focus on the same legal issue:  whether Allied

World had a duty to indemnify MNS.

By contrast, MNS's claim of breach of good faith and fair dealing involves

determining whether Allied World acted reasonably in its interpretation of the

contract and—because MNS seeks punitive damages—whether it acted "wantonly

or oppressively" in its dealings with MNS.  *See id.* at 1030 ("Punitive damages

may not be awarded for bad faith claims unless evidence reflects by clear and

convincing evidence that a defendant has acted wantonly or oppressively or with

such malice as implies a spirit of mischief or criminal indifference to civil

obligations, or where there has been some willful misconduct or that entire want of

care which would raise the presumption of a conscious indifference to

consequences." (cleaned up)).  MNS's bad faith claim centers not only on the

insurance policy's language, but also on the communications between the parties

and Allied World's actions leading up to, during, and after the mediation.  Because

these two legal issues are distinct, a jury would benefit from a bifurcation of trial.

*See Nelson v. Zurich Am. Ins. Co.*, 2006 WL 8440336, at *1 (D. Ariz. Oct. 17,

2006) (bifurcating coverage and bad faith issues because "bifurcation will allow

the jury to focus on one issue at a time").

MNS responds that the coverage and bad faith claims have a significant

overlap of factual issues, which it argues weighs against bifurcation.  *See* ECF No.

74, at PageID.3029.  But unlike the cases cited by MNS, the bad faith allegations in this case do not go to the heart of the coverage issue.  For example, in in *Kai v. Allstate Ins. Co.*, the court denied a motion to bifurcate and to stay discovery because there were factual allegations about the insurer's investigation of the damage to the insured's property and subsequent representations about coverage that went to both the coverage and bad faith claims.  Civil No. 20-00302, 2020 WL 9762913, at *2 (D. Haw. Dec. 11, 2020) (denying bifurcation of trial and discovery because "all of Plaintiffs' claims involve the same underlying facts and witnesses related to Defendant's handling of Plaintiffs' claim for benefits under the policy").  Here, in contrast, coverage does not hinge on whether Allied World inadequately, or badly, investigated factual matters.  Instead, the coverage issue simply turns on the policy's terms.  And it is the bad faith claim, not the coverage claim, that will open the door to factual disputes about who said what, where, and why.  Because the coverage and bad faith claims involve separate legal and factual inquiries, this factor therefore weighs in favor of bifurcation.

2.   The second factor—which considers whether issues are to be tried before a jury or the court—also weighs in favor of bifurcation.  Here, MNS has requested a jury trial for both the breach-of-contract and the bad faith issues.  But Allied World persuasively argues that there are not likely to be genuine disputes of material fact as to the breach-of-contract claim.  And if that proves correct, then

9

bifurcation of and a stay of discovery on MNS's bad faith counterclaim will allow the Court to separate the mostly legal question of whether Allied World owed coverage from the mostly factual question of whether Allied World acted in bad faith.

Of course, Allied World's prediction that the coverage claims are largely legal and can be resolved through dispositive motions is just that—a prediction. So if the Court ultimately does not resolve Allied World's declaratory claim or MNS's breach-of-contract claim on the papers, MNS may still argue at that point that the stay of discovery on its bad faith counterclaim should be lifted.  But at this stage, given that coverage issues are often resolved on dispositive motions, the Court concludes that Allied World's prediction is a sound one.  The second factor therefore weighs in favor of bifurcation and a stay of discovery because only the bad faith claim is likely to require a jury's resolution.

And putting aside discovery, the second factor would still weigh in favor of bifurcation even if Allied World's breach-of-contract claim were not resolved on dispositive motions.  Given the relatively minimal overlap between Allied World's breach-of-contract and bad faith claims, bifurcation would make the claims easier for a jury to resolve.

3.   The third factor, the posture of discovery, similarly supports bifurcation. Allied World represents that it is on track to file dispositive motions by the current

deadline, December 30, 2024.  *See* ECF No. 70, at PageID.2963.  And as Allied World notes, bifurcating and staying discovery on the bad faith claim will avoid contentious discovery disputes related to the bad faith claims until after the substantial coverage issue is resolved.  *See* ECF No. 72, at PageID.2982.

Significantly, one issue related to the scope of discovery concerns whether current counsel for MNS may properly continue representing MNS because there is a distinct possibility that MNS's current attorneys might be called as percipient witnesses on the bad faith claims.  *See* ECF No. 75, at PageID.3081.  As explained above, a key component of MNS's bad faith claim is that Allied World did not participate in good faith in the Corker Lawsuit mediation session in February 2023. Current counsel for MNS acknowledged at the hearing on this motion that members of their current litigation team participated in that mediation session. And if MNS's lawyers must provide testimony on what they perceived at the mediation session, they could be disqualified from further representation of MNS. *See United States v. Miske*, Case No. 19-cr-00099, 2023 WL 2629104, at *2 (quoting the Hawaiʻi Supreme Court's guidance that, in determining whether to disqualify an attorney as a necessary witness, "a court should base its determination on a considered evaluation of all pertinent factors including, inter alia, the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other

11

witnesses or documentary evidence by which these matters may be independently established" (cleaned up)).  This risk weighs in favor of bifurcating MNS's bad faith counterclaim, so that matters of possible disqualification may be taken up only after the largely legal coverage issues have first been resolved.

But even apart from possible disqualification, bifurcation serves judicial efficiency here because resolution of the coverage issues is likely to narrow the scope of discovery on MNS's bad faith claim.  In considering whether discovery requests on MNS's bad faith claim are unduly burdensome, the Court likely will conclude that a narrower range of discovery is appropriate if it has already concluded that there is no coverage; and, on the flipside, the Court likely will conclude that a broader range of discovery is appropriate if it has already concluded that Allied World had a duty to indemnify.  *See* Fed. R. Civ. P. 26(b)(1) (providing that in assessing whether a discovery request is "proportional to the needs of the case," the court must consider, among other things, "the importance of the issues at stake," the "amount in controversy," the "importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit").  Because discovery on MNS's bad faith claim is expected to be highly contentious and complex, bifurcation and a stay of discovery at this stage likely will allow the Court to more efficiently manage that discovery process after resolution of the coverage issue.

4.   The fourth factor—whether there is overlapping evidence—weighs in favor of bifurcation.  Bifurcation will promote efficiency in discovery and trial because there is not a significant overlap in the evidence that must be presented. *See Lopes v. GEICO*, Civ. No. 20-00293, 2021 WL 6497502, at \*5 (D. Haw. Aug. 24, 2021) (explaining that "there will likely be some overlap of documentary and testimonial evidence" on the coverage and bad faith claims but "this overlap is not significant enough to . . . weigh against the bifurcation of trial").

As noted above, the coverage dispute centers on the policy language and the Corker Lawsuit trial record.  The bad faith claim evidence, on the other hand, will require testimonial and written evidence about the communications between Allied World and MNS regarding coverage representations leading up to, during, and after the Corker mediation.  And the bad faith claims likely will also require evidence about how Allied World typically processes claims generally or claims like this one.  *See, e.g.*, ECF No. 74, at PageID.3027 (MNS explaining that "Allied's underwriters and claims handlers will have knowledge relevant to the interpretation and analysis of the policy provisions and Allied's adoption of various positions").  The factfinder is highly unlikely to need that kind of evidence to determine whether Allied World owed coverage to MNS at all.  *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d at 1021 (affirming district court's decision not to bifurcate a chiropractor's breach-of-contract and bad faith claims

13

against an insurer because evidence of the company's "profits, financial condition, and financial statements helped establish [its] alleged business strategies, incentives, and practices, all of which were relevant to" both issues).

The upshot of bifurcation is that the coverage issues likely can be resolved on a limited evidentiary record, whereas the vast majority of evidence that MNS seeks to uncover in discovery relates principally to its bad faith claims. Bifurcating the claims therefore promotes efficient resolution of the coverage claim and precludes excessive discovery before the second stage of litigation. *See Escobar v. Nev. Helicopter Leasing LLC*, Civ. No. 13-00598, 2019 WL 5777713, at *4 (D. Haw. Nov. 5, 2019) ("Bifurcation is particularly appropriate when it would permit the deferral of costly and possibly unnecessary proceedings, pending resolution of a potentially dispositive preliminary issue.").

5.   The fifth factor—whether the party opposing bifurcation will be prejudiced—does not weigh against bifurcation in this case because MNS will not be meaningfully prejudiced by the bifurcation of discovery and trial.

MNS contends that bifurcation will significantly delay discovery on an issue that it can still pursue even if it loses on the coverage issue. *See* ECF No. 74, at PageID.3030.  But given that dispositive motions are due in just three months, and that the case has already been pending for almost two years, delaying discovery on the bad faith claim for a relatively short period is not clearly prejudicial.  While

there might be evidence of the insurance policy introduced both in the summary judgment record for the coverage claims and later, at trial for the bad faith claims, there is not otherwise a significant duplication in evidence.  And although MNS may continue to pursue its bad faith claims even after coverage is resolved, it is not obvious that MNS will incur substantially more expenses by waiting for that determination.  *See Lopes,* 2021 WL 6497502, at *5 (concluding that the prejudice factor did not weigh against bifurcation because although "there may be some duplication of evidence . . . the amount of duplication is not likely to be enough to be prejudicial" to the party opposing bifurcation).

And, as noted above, if the Court ultimately concludes that the coverage issues cannot be resolved through dispositive motions, then MNS may at that point request that the stay of discovery on its second counterclaim be lifted.  This option limits the risk of prejudice to MNS, especially given that dispositive motions are due in three months.

*     *     *

Taken together, these factors show that in the circumstances of this case, bifurcation serves judicial economy.  Resolution of the coverage issue will turn on a careful parsing of the specific terms in corporate insurance policies.  Resolution of the bad faith claim will involve a greater focus on the credibility of witnesses and an understanding of the communications between the parties.  Because MNS

15

has requested a jury trial, resolving the more complex and largely legal issue of coverage first will help to more cleanly tee up the bad faith claim for jury and simplify resolution of each claim. *See Drennan v. Md. Cas. Co.*, 366 F. Supp. 2d 1002, 1008 (D. Nev. 2005) (bifurcating trial because it "would simplify the issues for trial and reduce the possibility of undue prejudice by allowing the jury to hear evidence of bad faith only upon establishing that [the insurer] breached the insurance contract").

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Bifurcation of Count II of Defendant's Counterclaim, ECF No. 72, is GRANTED.  Trial will be scheduled, and discovery will commence, on Count II of Defendant's counterclaim after Plaintiff's request for declaratory relief and Count I of Defendant's counterclaim have been resolved.

IT IS SO ORDERED.

DATED:  September 26, 2024, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 22-00469 MWJS-WRP; *Allied World National Assurance Co.*, et al. *v. NHC, Inc.*; ORDER GRANTING PLAINTIFFS' MOTION FOR BIFURCATION OF COUNT II OF DEFENDANT'S COUNTERCLAIM

16