IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ALLIED WORLD NATIONAL ASSURANCE COMPANY, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> NHC, INC., also known as MNS, LTD., doing business as ABC STORES, <br><br> Defendant. | Civil No. 22-00469 MWJS-WRP <br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE PORTIONS OF MNS'S EXPERT REPORT |

## INTRODUCTION

Before the Court is Plaintiffs' motion to strike portions of Defendant's expert report. ECF No. 104. Having reviewed the parties' written submissions and heard oral argument, the Court now GRANTS the motion in part and DENIES it in part.

## BACKGROUND

The Court has previously described the facts and procedural history of this case in some detail. *See Allied World Nat'l Assurance Co. v. NHC, Inc.*, 2024 WL 4303929, No. CV 22-00469 (D. Haw. Sept. 26, 2024). In this order, the Court assumes the reader's familiarity with that background and recounts it only as necessary to describe the issues raised in the pending motion.

Plaintiffs (collectively, Allied World) are insurance companies that denied coverage to Defendant MNS Ltd., a retailer, for liability stemming from MNS's

settlement of a separate class action lawsuit.  In the present lawsuit, two sets of claims are teed up:  first, whether Allied World owes MNS a duty of coverage under the relevant insurance policies, and second, whether Allied World acted in bad faith toward MNS.  The first set of claims involve legal questions of contract interpretation, which are likely to be resolved through cross-motions for summary judgment.  The second set of claims are less specific and potentially raise a host of factual questions about the behavior of the parties and their agents.  And the latter bad-faith claims are likely to be narrowed—or at least crystallized—once the legal questions of contract interpretation have been resolved.  For these reasons, and others, the Court's prior order granted Allied World's motion to bifurcate the proceedings, allowing the contract questions to go forward at this time and staying all proceedings on the bad faith claims until after resolution of the coverage issue.  *See id.*

Before the case was bifurcated, MNS disclosed the expert report of David A. Gauntlett, an insurance coverage attorney.  ECF No. 87.  His report touches on both the contract interpretation claims and the bad faith claims.  *See* ECF No. 104-3.  Large sections of his report read like a legal brief, full of case law descriptions and Gauntlett's opinions about which courts have correctly and incorrectly resolved legal issues.

In response to this expert report, and after the bifurcation order was entered, Allied World filed the pending motion to strike portions of Gauntlett's report.  ECF No. 104.  Because the bad faith claims are now stayed, Allied World does not seek the strike

2

the entirety of Gauntlett's report for both phases of the case, but only those aspects that appear to concern the contract interpretation or coverage claims that are currently being litigated. To that end, Allied World contends that Sections I, II, III, IV, and portions of Section VI of Gauntlett's report should be stricken because they "appear to relate to Gauntlett's coverage opinions, as opposed to his bad faith opinions." ECF No. 104-1, at PageID.3571 n.2. Allied World argues that the report "flagrantly violates the sacrosanct principle of law that 'an expert cannot testify to a matter of law amounting to a legal conclusion.'" *Id.* at PageID.3570 (quoting *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015)).

MNS filed an opposition to the motion, ECF No. 111, and the Court heard oral argument on December 2, 2024, ECF No. 114.

## **DISCUSSION**

As Allied World correctly notes, it is black letter law that "an expert cannot testify to a matter of law amounting to a legal conclusion." *Tamman*, 782 F.3d at 552. The cases reaffirming and applying this principle are legion. In *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, for example, the Ninth Circuit affirmed a district court's exclusion of expert testimony on "the reasonableness and foreseeability" of workers' reliance on certain representations, because they were "matters of law for the court's determination" and, "[a]s such, they were inappropriate subjects for expert testimony." 966 F.2d 443, 447 (9th Cir. 1992). And in reaching that conclusion, the

3

Ninth Circuit cited with approval an earlier decision in *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977), in which the Second Circuit had held—as the Ninth Circuit put in its own paraphrasing—that "expert testimony consisting of legal conclusions regarding [the] existence of contract or meaning of its terms [was] not admissible." *Aguilar*, 966 F.2d at 447.

Consider now what the challenged portions of Gauntlett's expert report contain. In Section I, Gauntlett begins his report with the open acknowledgment that it contains "legal research and analysis." ECF No. 104-3, at PageID.3596. Section II is entitled "Allied World's Problematic 'Exhaustion' Position." *Id.* at PageID.3597. There, Gauntlett argues that Allied World's first amended complaint "[m]isconstrue[s]" the policy, *id.* at PageID.3598, and contends that "[a]s defined by the policy and interpreted by applicable case law," the policy must be read in Gauntlett's preferred manner. *Id.* at PageID.3599. In Section III, Gauntlett argues that in light of his preferred reading of case law, the policy's "First Publication exclusion" should be interpreted as limiting coverage in a manner he proposes. *Id.* at PageID.3602-3608. In Section IV, he argues that while there is a dearth of case law on a point of interpretation, one "Hawaii case" supports his preferred reading and "[a] number of [other] cases are in accord." *Id.* at PageID.3609. He therefore opines that "Hawaii law will not enforce Allied World's 'exhaustion' claim." *Id*. (capitalizations omitted). And, finally, in Section VI, Gauntlett

4

opines that "[u]nder Hawaii law," MNS should be able to recover attorney's fees and is entitled to prejudgment interest. *Id.* at PageID.3617.

It would, perhaps, be an understatement to say that the challenged sections of Gauntlett's report "consist[] of legal conclusions regarding [the] . . . meaning of [contract] terms." *Aguilar*, 966 F.2d at 447. And it therefore follows that none of these legal conclusions are proper subjects for expert testimony.

Anticipating this objection, Gauntlett writes in his report that Federal Rule of Evidence 702—the rule governing the admissibility of expert testimony—"is satisfied" because "legal analysis is a critical component of claims analysis." ECF No. 104-3, at PageID.3596 (capitalizations omitted). The argument appears to be that because an insurer must understand the law when conducting a "reasonable investigation," an expert too must "understand those same cases" to "evaluate whether the insurer's conduct deviates so far from industry customs and practices as to run afoul of that case authority." *Id.* And in its briefing, MNS elaborates on this contention, noting that "the Court has not [yet] ruled that the provisions at issue are unambiguous," and therefore, "insurance custom and practice is relevant to the issue of coverage and such insurance custom and practice is necessarily informed by the applicable cases." ECF No. 111, at PageID.3872.

It is true that when passing references to legal terms are used merely to lay the foundation for an expert's non-legal opinions, those legal references will not necessarily

5

render the expert's opinions improper.  That is why, in *Hyer v. City & Cnty. of Honolulu*, the Ninth Circuit recognized that an expert who uses legal language may still "provide helpful testimony without veering into improper legal opinions."  118 F.4th 1044, 1059 (9th Cir. 2024) (cleaned up).  And, similarly, in *Hangarter v. Provident Life & Acc. Ins. Co.*, the Ninth Circuit allowed an expert to testify that insurance companies "deviated from industry standards," even though the expert's opinions "relied in part on his understanding of the requirements of state law."  373 F.3d 998, 1016-17 (9th Cir. 2004). The expert in *Hangarter*, the Ninth Circuit explained, was not giving "an opinion as to" a "*legal conclusion*, i.e., an opinion on an ultimate issue of law," because the expert's references to state law concerned states that were not "directly at issue in the case" and the referenced state statutes "were ancillary to the ultimate issue of bad faith" raised in that case.  *Id.*

But here, the legal analysis in Gauntlett's report cannot be viewed as merely laying the foundation for proper non-legal opinions—such as opinions about industry custom or practice, the extent to which Allied World's conduct may have deviated from them, or what participants in the insurance industry might typically understand policy provisions to mean.  That is because nothing in any of the challenged sections of Gauntlett's report—Sections I, II, III, IV, or VI—appears to actually offer any opinions of that non-legal variety.  Indeed, at the hearing on the motion, the Court directly asked MNS's counsel whether he could identify any sentence in the challenged sections of

6

Gauntlett's report that did more than merely describe and critique case law.  Counsel could not do so.  Accordingly, while it is sometimes appropriate for an expert to discuss legal materials to lay the groundwork for non-legal opinions about industry customs and practices, Gauntlett's expert report cannot take refuge in that principle because his report—at least as far as coverage is concerned—merely discusses and critiques the case law and then simply stops there.[1]  *See Haas v. Travelex Ins. Servs. Inc.*, 679 F. Supp. 3d 962, 968 (C.D. Cal. 2023) (excluding an expert's report where his "opinions on insurance industry custom and practice [were] indistinguishable from his legal conclusions"); *see also KB Home v. Illinois Union Ins. Co.*, 2023 WL 3432139, at *3-4 (C.D. Cal. Mar. 28, 2023) (precluding expert testimony on insurance coverage issue because his "commentary shed[] little light on actual customs and practices in the insurance and construction industries" given that his "testimony consist[ed] of expositions of legal principles and rules, interpretation of the Policy, and conclusions as to ultimate legal issues in dispute—*i.e.*, whether coverage existed under the Policy" (cleaned up)).

MNS rejoins that Gauntlett's discussion of the case law would still be helpful to the Court in resolving the coverage issues—which MNS emphasizes are complex and

---

[1]  Whether Gauntlett's discussion of case law might serve as an appropriate foundation for his separate opinions about bad faith is an issue the Court need not resolve at this time.  Allied World does not currently challenge Gauntlett's opinions about bad faith, and the Court therefore need not resolve to what extent, if any, Gauntlett's discussion of legal materials in other sections might serve as a proper foundation for those bad faith opinions.

7

not routinely encountered—and that the motion to strike may be denied for that reason alone. It is certainly true that a legal expert's legal opinions often are helpful, which is why such experts file amicus briefs to express their legal views. *See, e.g.*, *Mayle v. Felix*, 545 U.S. 644, 666 (2005) (Souter, J., dissenting) (citing Brief for Professor Arthur R. Miller et al. as *Amici Curiae* 20-21). But Gauntlett does not merely wish to express his views here as an amicus. Instead, he has submitted an expert report under Federal Rule of Evidence 702. The question for the Court, therefore, is not merely whether Gauntlett's expert's opinions might be helpful. The Court must also more broadly assess whether it is appropriate, under Rule 702, to allow the challenged opinions. And when, as here, an expert offers nothing but legal opinions, the answer must be no. *Accord Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 833 (C.D. Cal. 2010) (excluding expert report from David Nimmer—author of a "preeminent copyright treatise"—because while "Nimmer is well-qualified to perform a *legal analysis* regarding copyright claims . . . an expert cannot offer his legal opinion as to whether a triable issue of fact exists regarding copyright infringement; such an analysis is the exclusive province of the Court").

      MNS offers a few other defenses of the report, but none are availing. First, MNS argues that Gauntlett's report "largely relates to bad faith issues," and it points out that Allied World seeks only to strike the portions of the report concerning coverage issues. ECF No. 111, at PageID.3856. Although five of the report's seven sections appear to contain largely legal discussions about coverage, MNS argues that "to support and

8

explain his opinion that Allied acted unreasonably in denying coverage"—an issue that pertains to the bad faith claims—Gauntlett "necessarily must comment upon the allegations in the complaint, the terms and provisions of the Policy, and the relevant case law." *Id.* at PageID.3870. MNS's argument offers a reason why the Court should leave the expert report in place for now insofar as the bad faith claims are concerned, but that reason does not support leaving the expert report in the record with respect to the coverage claims.

Second, MNS contends that Gauntlett has previously been allowed to testify as an expert in at least two cases. *Id.* at PageID.3874. But as MNS itself acknowledges, Gauntlett's testimony in those cases, although touching on case law and legal standards, ultimately concerned the industry standard of care and an insurer's alleged "bad faith handling of a claim." *Id.* Allied World is not challenging, at least at this stage, the propriety of Gauntlett's expert report as to those issues—and the Court therefore need not resolve those issues now.

Third, and finally, MNS argues that there is no harm in allowing the expert report to remain in place because the Court will make its own decisions about the proper interpretation of the policy provisions, and it can consider Gauntlett's report to whatever extent it thinks appropriate. *See id.* at PageID.3873 ("There is no reason to 'strike' an expert report when a judge will likely be considering the issue on summary judgment because the judge is not likely to be unduly swayed by an expert's opinions if

9

the judge believes portions of the opinions invade the province of the court."). But there remain other costs to allowing an improper expert report to stand. For example, it would impose on Allied World the unwarranted cost of having to conduct a deposition of—and possibly additional discovery concerning—the expert, despite the impropriety of the expert's legal opinions on coverage. Considerations of cost always inform the Court's application of the Federal Rules of Evidence, as one of the overarching purposes of the rules is to "eliminate unjustifiable expense." Fed. R. Evid. 102. And those considerations certainly carry weight here, given that the Court ordered bifurcation in part to maximize judicial efficiency and minimize the parties' costs. Moreover, permitting MNS's expert report to stand when parties file dispositive motions in short time would also create the unfair risk of MNS benefitting from two summary judgment briefs—one legal brief prepared by MNS's counsel and a second legal brief submitted under the heading of an expert report—when it is only entitled to one. Leaving the report as it is would put Allied World in the unfair position of having to expend pages of its summary judgment briefing arguing that Gauntlett's opinions are inadmissible. That would be particularly unjust because it is already clear to the Court, thanks to full briefing and a hearing on this matter, that the challenged sections of the report should be stricken as to coverage claims.

\* \* \*

One final procedural point must be addressed.  When a motion to strike expert testimony is filed in advance of summary judgment motions and this far in advance of trial, it is often prudent to deny the motions as premature.  *See, e.g.*, *DeFazio v. Hollister, Inc.*, No. CIV 04-1358, 2009 WL 276758, at *1 (E.D. Cal. Feb. 5, 2009); *Pipkin v. Burlington N. & Santa Fe R.R. Co.*, No. C04-5591, 2005 WL 5977657, at *1 (W.D. Wash. Oct. 26, 2005).  Federal courts prefer to resolve disputes in concrete factual postures, and so courts often prefer to wait until a party has relied on particular aspects of an expert report—in, for example, summary judgment briefing—before deciding to exclude those aspects.  That is so because it is sometimes unclear whether a party even intends to rely on the report at the summary judgment stage.  Moreover, some parts of a report might be defective while others are appropriate—and an early motion to strike may often be too sweeping or broad to be manageable.  *See, e.g.*, *Pipkin*, 2005 WL 5977657 at *1 (denying motion as premature because it was not clear, at that early stage, "whether all, or some parts of, [an expert's] testimony will be admissible," and noting that the "court cannot clearly delineate the parameters of expert testimony piecemeal, at this point"); *see also Abuka v. City of El Cajon*, No. 17-CV-347, 2019 WL 1077495, at *4 (S.D. Cal. Mar. 7, 2019) (denying motion to strike because it could not "be said that [the expert's] report is entirely a legal conclusion").

In this case, however, the Court concludes it is appropriate to grant the motion to strike now.  For one thing, Allied World makes a properly tailored request:  it does not

seek to strike the entire report, but merely the specific sections that it believes concern the coverage issues.  For another, the Court need not strike any parts of the report as to the currently-stayed bad faith claims.  And as Allied World noted in its briefing and affirmed at the hearing, the use of the expert report is very much a live issue.  Allied World brought this motion now because dispositive motions are due in relatively short order, and it needed to know whether to depose Gauntlett in advance of those filings.  Allied World met with counsel for MNS to determine whether MNS intended to use Gauntlett's report in its summary judgment briefing on the coverage issues.  MNS represented that it might indeed do so and confirmed that intention at the hearing—so there is in fact a live issue, not just a hypothetical one, for the Court to rule on now.  Finally, as noted, MNS has not been able to identify any portion of Gauntlett's report that consists of anything other than a recitation and critique of judicial decisions—that is, MNS has not identified any sentence in the challenged sections that would not qualify as improper legal opinions.  There is, therefore, no reason to wait to see what passages MNS *might* rely on in its summary judgment briefing; because none of the challenged sections move beyond legal opinions, none is properly offered at this time as an expert opinion under Rule 702.

      Accordingly, the Court GRANTS Allied World's motion to the extent it seeks to strike Sections I, II, III, IV, and portions of Section VI of Gauntlett's expert report in connection with the coverage claims that are currently being litigated.  The Court does

not, however, strike any aspect of Gauntlett's report as to the bad faith claims that are currently stayed. Whether Gauntlett's report should be stricken in whole or part as to the bad faith claims is an issue that the Court need not—and, therefore, will not—resolve until the stay of the bad faith claims has been lifted. To the extent Allied World's motion requested that this Court strike the challenged portions in connection with all claims, therefore, that aspect of Allied World's motion is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED: December 5, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 22-00469 MWJS-WRP; *Allied World National Assurance Co.*, et al. *v. NHC, Inc.*; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE PORTIONS OF MNS'S EXPERT REPORT